Judge Haggin
delivered the opinion of the Court.
William Locke made a will, among other things de" vising to his daughter, Polly, “ one bond to the amount of one hundred and sixty dollars, which was then in the hands of his brother, Frank, to collect, and for that money to be put to the use of buying her a negro girl,” and appointing his wife executrix and John Marshall his executor.
In the year 1800, this will was proved and administration obtained in .Mercer. William H. Slaughter married the widow, and in the year 1801, was appointed guardian to the child, Polly. On the 12th of May, 180.2, Marshall addressed a letter to Frank Locke, in North-Carolina, in urgent terms requesting payment of this money to the bearer, Samuel Carter, desiring him, if that should not be done, not to pay to any other person, and adding that he had made an arrangement with Can ter for it, highly advantageous to the devisee.
On the 5th of June following, Frank Locke paid 'Carter $¡60 10, on the 9th of June $24, and $101 in September, in all $185 10.
Moore married Polly Locke, and i n the year 1815, with his wife, commenced suit against Marshall and Slaughter and wife, requiring a settlement and distribution, and particularly charging that this legacy had been collected by Marshall, and praying its payment. Mrs. Moore di§d; her husband obtained administration on her estate,. *70 revived the suit, and ai the September term, 1823, a decree was rendered in bis favor against the defendant, Marshal], for $417 69, with interest from tliattime until paid, with costs, &c.
/in oxeeuto.r, whose agent collected money in another State, devised by the testator to bo there collected and invested in a slave for the devisee, after denying the collection, insisting that the guardian ofthe devisee had collected it, and also that he, the executor, had paid it to the guardian, and failing in the proof, is liable to the devisee for principal and interest of this State.
That (here is no proof jn such case, that the executor over received the money from his agent, is not malorial, especially where, after many years, g^owa to**' bring the agent to ap-coun^
*70 It is useless to set forth the many bills and answers filed. The answers are equivocal; but we understand the defendant, Marshall, to deny that Carter received the money; to suppose that Slaughter had collected and paid it over to Moore;, and to rely upon a sefile-roent which he made with Slaughter, and particularly on a receipt which Slaughter, as- the guardian of Polly Locke, executed to him upon such settlement.
We could not expect Marshall to abandon all his own concerns, and perform a tour to North-Carolina in pursuit of this money; but within a reasonable time, he should certainly have availed himself of an opportunity, many of which must have occurred, to have it brought to Kentucky. This he did by Carter, to whom no exception has been taken. Carter received the amount, and if he did not promptly settle with and- pay it over to Marshall, it was the duty of the latter to coerce him. Greater vigilance now devolved on Marshall, as he had interdicted payment by the depository, except to Carter or himself; and to permit twelve or fifteen years to elapse without further inquiry, was negligence'of the most culpable kind.
If Carter, being at the time- entitled to confidence, misapplied the money, and proved unable to reimburse it, and Marshall had shown this matter in defence-, probably he would, m conscience, stand discharged-; but this has not been done, and Marshall’s letier implies.that he had disposed ofthe demand to Carter.
The supposition that Slaughter bad received and paid over the money to Moore, is too arbitrary to merit consideration in the absence of the proof, which clearly shows that it was paid to the agent of Marshall; and sustained as (be complainant is by this proof, and by the answer of Slaughter, nothing unfavorable to him can result from (he fact that Marshall filed, a crossbill avowing those suspicions, which the complainant failed to answer. If Slaughter had settled with Moore, it was. no matter of merit in Marshall.
Nor is it presumable, if the defendant settled with Slaughter, as the guardian of Polly Locke, that he accounted fpr this legacy, denying, as he does, that be *71 ever collected it, and expressing an opinioh that Sláugh-ter had collected it from Francis Locke, in North-Carolina. The defendant, however, has failed to prove a settlement with Slaughter of any kind. The two witnesses who testify the filing of a receipt purporting to be from Slaughter to Marshall, say nothing .from which it may be inferred that they were acquainted with Slaughter’s hand-writing, or knew any thing of its execution; and Slaughter admits that Marshall settled with him the assets, exclusive of this legacy, and denies the receipt of that.
Triplett, for plaintiff; Sharp and Monroe, for defendant.
It seems, therefore, to the court, that the defendant, Marshall, was justly chargeable with this money, with interest on it, and no more has been decreed against him. Indeed, nothing else has been involved in this controversy.
Decree affirmed with costs.